## Frank Pickrel et al. v. O. J. Sherman et al.

1. ELECTIONS—*Unusual Form of Ballot Used at School Election.*— An election under the school law is not illegal because the form of ballot used is not the usual form, where the voters selected the form of ballot themselves as their way of expressing their purpose, and the intention of the voter was plain in the use of them.

**Bill for Injunction.**—Appeal from the Circuit Court of Knox County; the Hon. JOHN A. GRAY, Judge presiding.    Heard in this court at the April term, 1902.    Decree dismissed.    Opinion filed December 16, 1902.

A. M. CRAIG and J. J. TUNNICLIFF, attorneys for appellants.

WILLIAMS, LAWRENCE & WELSH, attorneys for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

In this case a bill was filed by appellants, alleging that they were citizens, residents, taxpayers and legal voters of township ten (10) north, range three (3) east, Knox county, Illinois, known as Haw Creek township, for the purpose of enjoining appellees, as the board of education of said township, from issuing, selling or disposing of any bonds of said

township and from erecting any high school building, until a proper and legal election should be held by the voters of said township, and until the further order of the court. A preliminary injunction was granted by the master in chancery, and thereafter a sworn answer was filed by appellees. Later a motion was made before one of the judges of the Circuit Court of said county in vacation, to dissolve the injunction, and upon the hearing the affidavits of some twenty persons were read by appellees, in support of their motion. The judge entered an order dissolving the injunction, from which complainants below appealed, and the injunction was continued in force pending the appeal.

The bill alleges that upon a petition presented to the township treasurer of said township March 14, 1902, an election was had which resulted in favor of the establishment of a high school in said township; that afterward, on May 24, 1902, an election was held at which appellees were declared elected a board of education; that thereafter, on June 14, 1902, an election was held, pursuant to notice given by said board, for the selection of a school house site, and that at said election Gilson, which was a village in said township, received a majority of the votes as the site of the high school building; that afterward .on June 28, 1902, another election was held upon the question of issuing bonds to erect a high school building, which was declared by the judges of the election to have resulted in favor of the proposition; that on July 8, 1902, a bill in chancery was filed by certain of the appellants, to restrain said board of education from issuing, selling or disposing of the bonds of said township and from erecting a high school building until a proper and legal site should be selected, by a vote of the legal voters of the township; that an injunction was issued in accordance with the prayer of the bill; that immediately after such injunction was issued, appellees called another election to be held on July 19, 1902, at which the questions to be voted on were the selection of a high school site, the building of a high school house and the issuance of bonds to the amount of $5,000 to build the high school

Pickrel v. Sherman.

house; that the return as made by the judges and clerks of election showed that 115 votes were cast in favor of lots one, two and three, block twelve, Gilson, for the school house site, and eighty-eight votes for another site; that 115 votes were cast in favor of building a high school and none against it; that 115 votes were cast for issuing $5,000 in bonds and eighty-eight votes against that proposition, and that four votes were rejected.

The bill further alleges that the election was illegal and void because it was held under the general law of the State of Illinois, known as the Australian ballot law, when it should have been held under the election law for the election of school directors and boards of education; that the ballots used at the election required the voter to place a cross (x) in the blank space against the answer the voter desired to give to the question voted upon, which is not required by the school law in school elections.

The only ground for relief alleged by the bill is, in short, that the election was void because it was held under the Australian ballot law, and the only relief sought is that the defendants to the bill be enjoined from issuing, selling or disposing of the bonds of the township and from erecting a high school building until a proper and legal election should be held. The answer, and affidavits in support thereof, show that none of the requirements of the Australian ballot law were observed at the election. The only respect in which the election resembled one held under the Australian ballot law, was in the form of the ballots used, which were substantially in the form of those used under the Australian ballot law. The voters indicated their preferences by marking a cross (x) in certain squares placed before the propositions to be voted upon, and the election officers, in counting the votes, assumed that a mark in the square before a proposition indicated that the proposition so marked was the one favored by the voter in casting the ballot.

Of the four rejected votes two had crosses in all the squares and two had no crosses in any of the squares, so

that the intention of the voters could not be ascertained by the application of the same rule as that applied to the other tickets. These tickets were not furnished by the township to the voters, but were prepared by the voters themselves. There were two forms of tickets used, the wording of which differed to quite an extent, but in both, the propositions named therein were headed "for" or "against," and were each preceded by a square.

It is not claimed that any voter misunderstood the ballot or that his intention in placing the cross (x) before a proposition was misconstrued by the election judges. Neither was it contended that any of the votes had been counted in a manner not intended by the parties casting them. So far as it appears from the record the only electors whose votes were not cast and counted in the manner intended by them, were those casting the four rejected ballots, and those ballots could not have changed the result in any respect. The voters selected this form of ballot themselves as their way of expressing their purpose. No one can doubt that each adopted the cross (x) as his method of expressing his intention, and while the form of ballot was not such as is ordinarily used in elections under the school law, yet the intention of the voter was plain in the use of them, and that intention should prevail.

We are therefore of opinion that the election in question was legal, and the decree dissolving the temporary injunction issued by the master in chancery is accordingly affirmed.